UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY RAINEY                                          CIVIL ACTION

VERSUS                                              NO. 11-558

MARLIN GUSMAN ET AL.                                SECTION "J" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Troy Rainey, is a prisoner currently incarcerated in the Jackson Parish Correctional Center.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman, Orleans Parish Prison Wardens E. Carr and J. Brown, the Orleans Parish Prison Medical Director and the Orleans Parish Prison Medical Staff.  He seeks compensatory and punitive damages in the amount of $125,000.  Record Doc. No. 2 (Complaint at ¶¶ III and V).

On May 10, 2011, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Blake Arcuri, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Rainey testified that he was then incarcerated in the Jackson Parish Correctional Center in Jonesboro, Louisiana, having been convicted on May 5, 2010 of possession with intent to distribute illegal drugs.  He was sentenced to ten years in prison.

He confirmed that the claims he makes in this case arise from his incarceration in the Orleans Parish Prison ("OPP") from September 13, 2009, until May 2010, when he was transferred to the Jackson Parish Correctional Center.  He was a pretrial detainee for all but a few days of his OPP incarceration as to the possession with intent to distribute charges.

Rainey alleged that he did not receive adequate medical care at OPP for either his arthritis or diabetes, and that he was transferred from the medical tier at OPP into the general population in retaliation for his complaints about the inadequate medical care. He stated that he had received a copy of the medical records that were previously ordered, but that all of the records were not entirely accurate in that he was only treated by a doctor about five times while at the prison.  Record Doc. No. 18-1.

Rainey testified that he is 44 years old, a diabetic and on insulin.  He stated that he was placed on the medical tier upon his arrival at OPP and that diabetic inmates were usually placed on the medical tier at the prison, where medical staff, including nurses, were regularly stationed.  Rainey stated that he was placed on the medical tier after his arrival at OPP and remained on the tier until he was transferred into the general population on February 4, 2010.

Rainey's principal complaint is that he was denied his prescribed arthritis pain medication for approximately 90 days, from November 2009 until January 2010.  Rainey

said he was prescribed Naprosyn[1] for arthritis related pain soon after being placed on the medical tier. He did not recall the name of the doctor who prescribed the medication, but his medical records indicate that Rainey was treated at OPP by Dr. Samuel Gore. Record Doc. No. 18-1 (Diabetes Order Set 09/28/2009). Rainey said that in November 2009, the drug was "not reordered."

Rainy testified that he requested Naprosyn again during treatment for a staff infection by Dr. Marcus Dileo on January 29, 2010. Record Doc. No. 18-1 (Provider Note/Order 01/29/2010). He claimed, however, that Dr. Dileo did not order the medication despite assurances to the contrary. Rainey stated that he began receiving the pain medication again about two weeks after he was moved off the medical tier.

Rainey alleged that as a result of 90 days without the medication, he suffered achy bones, cramping and pain in his joints. He stated that the cold temperature in the prison worsened these symptoms.

Rainey also alleged that he received inadequate medical care for his diabetes following his transfer from the medical tier to general population. He stated that he needs to check his blood sugar and take insulin daily. He testified that he did not receive his insulin and diabetic snacks on at least ten (10) occasions once he was transferred from the medical tier. He testified that he inquired about the problem and one nurse, Nurse

---

[1]Naprosyn is a brand name for Naproxen, a medication used to "relive pain, tenderness, swelling, and stiffness caused by" various forms of arthritis. PubMed Health, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000526.

Hammonton,[2] told him she "refused to walk up the steps" to deliver the insulin.  Rainey stated, however, that other nurses were also responsible for his missed insulin.  The medical records show that Rainey was treated by Dr. Dileo on April 2, 2010, and was prescribed insulin for 30 days. Record Doc. No. 18-1 (Provider Note/Order 04/02/10). Rainey did not recall this meeting with Dr. Dileo, but said it may have occurred.

Rainey testified that on days when he did not receive his insulin, he lacked the energy to get out of bed and became weak.  He stated that he reported his condition to the deputies on duty, some of whom recorded his condition.  Rainey alleged that his energy level improved on days he received his insulin.

Rainey's second claim is that he was transferred from the OPP medical tier and into general population in retaliation for complaining about his failure to receive arthritis pain medication.  Rainey was transferred into the OPP general population on February 4, 2010.  He claimed to have been the only diabetic transferred from the medical tier and that he was transferred despite having what he described as an "open wound."  Rainey asserted that he was cleared to enter general population without first seeing a doctor.

---

[2]In his statements of facts responses provided in response to my order, Rainey names the nurse who would not bring him his insulin as "Nurse Hammonton." Record Doc. Nos. 9, 19. Nurse Hammonton's name does not appear in the medical records, but there is a record signed by a Nurse Hammond.  Record Doc. No. 18-1 (Nurse Notes 10/12/2009).

However, the medical records indicate that Rainey was moved from the medical tier on orders of Dr. Joseph Gautreaux, III.   Record Doc. No. 18-1 (Provider Note/Order 02/04/10).

Prior to his <u>Spears</u> hearing, Rainey filed a second written statement of facts that I received after the hearing.  Record. Doc. No. 19.  In that statement, Rainey reiterated that he was without pain medication "for over three months" and that he was moved from the medical tier in retaliation for his complaints and despite his diabetic condition. Record Doc. No. 19 at p. 1.  He restated that Nurse Hammonton refused to bring him his insulin.  Record Doc. No. 19 at p. 1.  He alleged that his constitutional rights had been violated by Orleans Parish Criminal Sheriff Marlin N. Gusman, Nurse Hammonton and Drs. Dileo and Gautreaux, III.  Record Doc. No. 19 at p. 1.  Rainey also wrote that Nurse Eddie could testify that Dr. Dileo did not order his pain medication and that Nurse Page was on duty when that request was made. Record Doc. No. 19 at p. 1. In addition, Rainey's response listed ten days on which he allegedly he did not receive insulin, as well as four specific grievances filed at OPP and the dates they occurred.  Record Doc. No. 19 at p. 3.

## <u>ANALYSIS</u>

I.    <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005-06. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d

6

318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504

U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable.  "The court should allow

proper cross-examination and should require that the parties properly identify and

authenticate documents."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482); <u>Williams v. Luna</u>, 909

F.2d 121, 124 (5th Cir. 1990).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it

lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995);

<u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the

irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably

meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>,

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question

of law which the district court ultimately finds is correctly resolved against the plaintiff,

dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not."  <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28

U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In two recent opinions, the United States Supreme Court clarified the standard for reviewing a complaint under Rule 12(b)(6).  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  The Fifth Circuit has explained the Supreme Court's current standard as follows.

> When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party.  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  The Supreme Court in Iqbal explained that Twombly promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief.  First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Legal conclusions "must be supported by factual allegations."
>
> Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Rhodes v. Prince, 360 F. App'x 555, 557-58 (5th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949, 1950; Twombly, 550 U.S. at 555; Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)) (citing Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)).

The Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory

8

statements, do not suffice" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949. The facial "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation omitted).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of constitutional rights, even under the broadest reading.[3]

## II.   MEDICAL CARE

Rainey was a pretrial detainee awaiting trial on a possession with intent to distribute charge at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial

---

[3]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he

10

demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Rainey fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Rainey's testimony and medical records negate any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described presented serious medical needs that posed a substantial

12

risk of harm during his incarceration at the jail.  Rainey's testimony about his arthritis and diabetic condition did not identify any serious risk of harm or any actual serious harm resulting from the alleged denial of treatment sufficient to rise to the level of serious medical needs for purposes of constitutional analysis.  At most, he suffered aches and pains endemic to arthritis and weakness from the 10 days during which he was without his insulin.

Even assuming, without concluding, that plaintiff's medical conditions were serious conditions for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint as amended by his testimony and  medical records shows that he received constitutionally adequate medical care for his diabetes and arthritis while incarcerated at OPP.  Greer v. Tran, 2005 WL 428856 (5th Cir. Feb. 24, 2005) (no deliberate indifference to serious medical needs where plaintiff was tested for and diabetes mellitus ruled out in prisoner who ultimately died after falling into a diabetic Keto acidotic coma); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995); (no deliberate indifference where prisoner received medical treatment for diabetes, including blood sugar level monitoring, insulin doses and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes); Hall v. Thomas, 1998 WL 404386 (S.D. Tx. Jan. 16, 1998), aff'd, 190 F.3d 693, 697 n. 2 (5th Cir. 1999) (district court's dismissal

of prisoner's Section 1983 claim concerning medical treatment for diabetes abandoned on appeal, otherwise affirmed); Smith v. Harris, 401 F. App'x 952, 953 (5th Cir. 2010) (dentists were not deliberately indifferent when they failed to prescribe pain medication to a prisoner for his infected teeth); Algeria v. Pearson, 214 F. App'x 407, 408 (5th Cir. 2007) ("the decision to administer [pain medication] was a medical judgment as opposed to deliberate indifference to [the prisoner's] pain"); Williams v. Bearry, 273 F.3d 1096, 2001 WL 1085197 (5th Cir. 2001) (no deliberate indifference when doctors discontinued prisoner's pain medication).

While it is clear from plaintiff's allegations and testimony that he is not satisfied with the quality or effectiveness of his medical care, it is equally clear that the medical care provided was substantial, reasonable and constitutionally adequate. By his own testimony, he was seen by doctors at least five (5) times and kept on the OPP medical tier for much of his incarceration. The medical records are replete with references to treatment received for his conditions. Certainly, no finding of deliberate indifference to serious medical needs in the constitutional sense can be made based on this record. This conclusion applies to Dr. Gautreaux's decision to transfer Rainey from the medical tier. Record Doc. No. 18-1 (Provider Note/Order 02/04/10).

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton

disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Contentions like Rainey's that amount to a mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)  (plaintiff who alleged that treatment received for his broken hand was inadequate failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (although delay in treating plaintiff's broken hand made surgery impractical and may have been negligent, it did not establish constitutional violation); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of

deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim upon which relief may be granted under Section 1983.

III.    <u>RETALIATION</u>

Rainey asserts that he was subjected to retaliation for filing grievances and otherwise complaining about his medical care when he was moved from the OPP medical tier and into the prison's general population on February 4, 2010.

Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct.  <u>Morris v. Powell</u>, 449 F.3d 682, 684 (5th Cir. 2006); <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995).

The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation,

i.e., but for the retaliatory motive the complained of incident . . . would not have occurred. With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66) (quotations and additional citations omitted).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment. Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison. The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  Id.

17

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .   The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

Recently in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w]hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

18

> . . . . Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
>
> With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

Id. at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim. Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

> is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. Officials likewise may not retaliate against an inmate for using the grievance system. A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. The inmate must show more than his personal belief that he was the victim of retaliation. Mere conclusory allegations of retaliation are not enough. In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a de minimis act.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820

19

(5th Cir. 1988); Hilliard v. Board of Pardons & Paroles, 759 F.2d 1190, 1193 (5th Cir.

1985); Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), amended in part and vacated in

part, 688 F.2d 266 (5th Cir. 1982); Campbell v. Beto, 460 F.2d 765, 768 (5th Cir. 1972)),

report & recommendation adopted, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (Folsom,

J.) (emphasis added).

Accepting as true plaintiff's testimony and written allegations concerning his

transfer from the OPP medical tier to the general population, he has not established an

abuse of the discretion that the law assigns to prison officials.  A prison inmate "does not

have a constitutional right to be housed in a particular facility."  Wolters v. Fed. Bureau

of Prisons, 352 F. App'x 926, 928 (5th Cir. 2009) (citing Olim v. Wakinekona, 461 U.S.

238, 244-45 (1983); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)).  No violation

of Rainey's federal constitutional rights has occurred under the transfer circumstances

described in his complaint.

In addition, Rainey cannot show either a retaliatory motive for the actions of Dr.

Gautreaux or the OPP Medical Staff or that, but for a retaliatory motive, the transfer

would not have occurred.  Rainey admitted that he received pain medication while in

general population.  After his transfer, Rainey continued to receive treatment for his

diabetes.  Thus, his allegations do not give rise to any plausible inference of retaliatory

motive on the part of the defendants and therefore does not "state a claim to relief that

is plausible on its face."  Iqbal, 129 S. Ct. at 1949 (quotation omitted); see Wolters, 352

20

F. App'x at 928 (citing <u>Jones</u>, 188 F.3d at 325; <u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998)) (Inmate's claim that prison officials retaliated against him when they denied his requests to be reassigned to a different unit of the prison and they deliberately permitted him to be housed with gang-affiliated inmates "fails because Wolters has not presented any evidence that any prison official acted with a retaliatory motive and has not alleged a chronology of events from which a retaliatory motive might plausibly be inferred."); <u>Bishop v. Does</u>, 350 F. App'x 941, 944 (5th Cir. 2009) (citing <u>Jones</u>, 188 F.3d at 325) (Inmate's claim that prison official transferred him out of a unit in retaliation for his previous litigation against staff in that unit failed because plaintiff made only conclusory allegations and had no evidence of retaliatory intent.); <u>Leggett v. Comer</u>, 280 F. App'x 333, 336 (5th Cir. 2008) (Retaliation claim was frivolous when inmate failed to show that "his property would not have been missing but for his letter-writing about [prison] officials, and [that a] retaliatory intent motivated the lack of adequate inventories and storage of his property.").

Plaintiff's allegations in this case are unlike those in <u>Richard v. Martin</u>, No. 09-30159, 2010 WL 3007941 (5th Cir. July 27, 2010). In <u>Richard</u>, the inmate had filed a grievance against prison officials. He asserted that defendants retaliated against him for exercising that First Amendment right by placing him, on the same day he submitted the grievance, in solitary confinement for 13 hours in a four-foot-by-eight-foot cell without a mattress or toilet and without his having committed any disciplinary infraction to

justify the action.  The Fifth Circuit held that these "allegations are sufficient to show causation, a chronology of events from which retaliatory motive can plausibly be inferred, and a more-than-de-minimis retaliatory adverse act."  <u>Id.</u> at*2.

Unlike the immediate temporal proximity between the filing of a grievance and the allegedly unjustified punitive actions in <u>Richard</u>, Rainey has alleged only his personal, conclusory belief that he was the victim of retaliation.  He has failed to allege any <u>facts</u> showing that any prison official possessed a retaliatory motive with regard to his transfer to general population.

Finally, Rainey has failed to show any actual injury resulting from the alleged retaliation.  His medical care continued.  Record Doc. No. 18-1.  Rainey received care for his abscess.  Record Doc. No. 18-1 (Wound Care Evaluation & Treatment Sheet).  He has not shown that a person of ordinary firmness would be deterred from exercising First Amendment rights as a result of the transfer he claims was the retaliatory act in this case.

Rainey's retaliation claim alleges no violation of a specific constitutional right as a result of any allegedly retaliatory acts.  He has not shown the existence of either a retaliatory motive or causation.  Accordingly, his retaliation claim is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.  It must be dismissed pursuant to 28 U.S.C. § 1915(e).

V.     SHERIFF AND WARDENS NOT LIABLE

Rainey makes no claim that Sheriff Gusman or Wardens Carr and Brown were personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based.  "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992);  Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).  To hold any of these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Sanders, 950 F.2d at 1159-60.  In the instant action, plaintiff has failed to establish either of these two criteria.

VI.    IMPROPER DEFENDANT

In his complaint, Rainey named the Orleans Parish Prison Medical Staff as a defendant.  However, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under

23

Section 1983, as the statute and case law define that term.  Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009) (suit against medical staff dismissed because "the Medical Staff is not a suable entity under § 1983"); Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008) (citations omitted) (suit dismissed because the prison medical care unit "does not appear to be a distinct legal entity that is subject to suit"); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993).  Thus, Rainey can assert no claim against the OPP Medical Staff under Section 1983.

VII.   AMENDMENT WOULD BE FUTILE

Finally, in his second written statement of facts filed in response to my order, Rainey changed the list of those who allegedly violated his constitutional rights.  Record Doc. No. 19.  However, even if the second written statement of facts was treated as a motion to amend the complaint to add additional defendants, including individual doctors and nurses, such an amendment would be impermissibly futile.  The facts on which he bases his claims, as discussed above, establish that any claims he might assert under

Section 1983 are without merit because his constitutional rights were <u>not</u> violated in any way.  <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993).

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this __8th__ day of June, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[4]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.